UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTANTINE GUS CRISTO,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>THE CHARLES SCHWAB CORPORATION; SCHWAB HOLDINGS, INC.; CHARLES SCHWAB & CO., INC.; CHARLES SCHWAB BANK; and CHARLES SCHWAB INVESTMENT MANAGEMENT, INC.,<br><br>　　　　　　　　Defendants. | Case No.: 17-cv-1843-GPC-MDD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAYING FIRST AMENDED COMPLAINT**<br><br>**[Dkt. No. 24.]** |

　　　Pending before the Court is Defendants The Charles Schwab Corporation, Schwab Holdings, Inc., Charles Schwab & Co., Inc., Charles Schwab Bank, and Charles Schwab Investment Management, Inc.'s (collectively "Defendants") motion to compel arbitration and stay or dismiss proceedings. (Dkt. No. 24.) Plaintiff Constantine Gus Cristo ("Plaintiff"), proceeding pro se, filed an opposition to the motion. (Dkt. No. 28.) Defendants filed a reply. (Dkt. No. 29.) A hearing was held on April 6, 2018. (Dkt. No. 30.) Plaintiff Cristo appeared as well as defense counsel Jared Speier, Esq. (Id.) Based

1

on the reasoning below, the Court **GRANTS** Defendants' motion to compel arbitration and stays the case.

## Factual Background

In 1995, Plaintiff, through his investment advisor, David Neff ("Neff"), opened a Schwab IRA account and signed a Schwab IRA Application ("IRA Application"). (Dkt. No. 24-2, Lundy Decl. ¶ 7; id., Ex. A.) The Schwab IRA Application contained an arbitration clause and provides in relevant part:

> I agree to settle by arbitration any controversy between myself and Schwab and/or any Schwab officers, directors, employees or agents relating to the IRA Account Agreement, my Brokerage Account or account transactions, or in any way arising from my relationship with Schwab as provided in Section 15 of the IRA Account Agreement. The following disclosures are made pursuant to applicable self-regulatory organization rules: (1) Arbitration is final and binding on the parties; (2) The parties are waiving their right to seek remedies in court, including the right to a jury trial; (3) Pre-arbitration discovery is generally more limited than and different from court proceedings; (4) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited; (5) The panel of arbitrators will typically including a minority of arbitrators who were or are affiliated with the securities industry.

(Dkt. No. 24-2, Lundy Decl, Ex. A at 5.) The IRA Application also incorporates by reference the IRA Account Agreement which also includes an arbitration clause. (Id.)

In 1997, Plaintiff, himself, opened a Schwab One Brokerage Account and signed an Account Application ("Schwab One Application"). (Dkt. No. 24-2, Lundy Decl. ¶ 8; id., Ex. B.) The Schwab One Application contained an arbitration clause and provides in pertinent part:

> I agree to settle by arbitration any controversy between myself and Schwab and/or any Schwab officers, directors, employees or agents relating to the Account Agreement, my Brokerage Account or account transactions, or in any way arising from my relationship with Schwab as provided in Section 16, pages 8-10 of the Brokerage Account Agreement and Section 23, pages 26-29 of the Schwab One Account Agreement. The following disclosures are

> made pursuant to applicable self-regulatory organization rules: (1) arbitration is final and binding on the parties; (2) the parties are waiving their right to seek remedies in court, including the right to a jury trial; (3) pre-arbitration discovery is generally more limited than and different from court proceedings; (4) the arbitrators' award is not required to include factual findings or legal reasoning, and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited; (5) the panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

(Dkt. No. 24-2, Lundy Decl., Ex. B at 10.) This Application also incorporates by reference the Brokerage Account Agreement and the Schwab One Account Agreement. (Id.)

On November 6, 2017, Plaintiff, proceeding pro se, filed a First Amended Complaint ("FAC") alleging grievances relating to Plaintiff's Schwab accounts stemming from Defendants' production of Plaintiff's financial records to the Internal Revenue Service ("IRS"). (Dkt. No. 8.) The FAC alleges violations of the Right to Privacy Act, 12 U.S.C. §§ 3403, 3404(c), 3405(2), 3407(2), 3410, 3412(b); violations of 18 U.S.C. § 1519; violations of 18 U.S.C. § 241 & § 245(b)(l)(B); violations of 18 U.S.C. § 872; violations of 18 U.S.C. § 1001(a); and violations of 18 U.S.C. § 1341. (Id.)

### Discussion

Defendants move to compel arbitration and stay or dismiss proceedings arguing that the arbitration clauses in the IRA Application and the Schwab One Application control Plaintiff's Complaint. (Dkt. No. 24.) Plaintiff opposes.

**A.  Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, espouses a general policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The

3

17-cv-1843-GPC-MDD

United States Supreme Court has stated that there is a federal policy favoring arbitration agreements. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 476 (1989). Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." (Id.)

When considering a party's request to compel arbitration, the court is limited to determining (1) whether a valid arbitration agreement exists, and if so (2) whether the arbitration agreement encompasses the dispute at issue. Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008). If these conditions are satisfied, the court is without discretion to deny the motion and must compel arbitration. 9 U.S.C. § 4; Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration.").

In interpreting the validity and scope of an arbitration agreement, the courts apply state law principles of contract formation and interpretation. Lowden v. T-Mobile USA, Inc., 512 F.3d 1213, 1217 (9th Cir. 2008) (First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Arbitration agreements, "[l]ike other contracts . . . may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Rent–A–Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68 (2010) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). The party opposing arbitration bears the burden of showing that the agreement does not cover the claims at issue. Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 91-92 (2000).

////
////
////
////
////

4

## Discussion

### A. Whether a Valid Arbitration Agreement Exists

Defendants contend that valid arbitration agreements exist because the arbitration provisions are "clear and unequivocal." (Dkt. No. 24-1 at 10.[1]) They assert the signature lines should have made it clear to Plaintiff what he was signing as the arbitration provisions were placed directly above the line where he signed the Agreements and he should have been alerted to it. Since Plaintiff signed the Agreements, he assented to the arbitration provisions contained in both documents. Plaintiff responds that he never agreed to binding arbitration as he did not "review, negotiate or agree to any agreements referenced within."[2] (Dkt. No. 28 at 10.)

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Tech., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 648 (1986); Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) ("it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration.") "Every contract requires mutual assent or consent (Civ. Code, §§ 1550[3], 1565[4]), and ordinarily one who

---

[1] Page numbers are based on the CM/ECF pagination.
[2] Plaintiff contends that his claims are ineligible for arbitration because six or more years have passed from the events giving rise to the claim. As Defendants note, an issue concerning eligibility is one for the arbitrator, as this Court is limited to determining whether an arbitration clause exists, and the scope of the arbitration provision. See Esquer v. Education Mgmt. Corp., --F. Supp. 3d--, 2017 WL 5194635, at *2 & (S.D. Cal. 2017) (a district court may not review the merits of a case in assessing whether a party should be compelled to arbitration).
[3] It is essential to the existence of a contract that there should be:
1. Parties capable of contracting;
2. Their consent;
3. A lawful object; and,
4. A sufficient cause or consideration.
Cal. Civil Code § 1550.
[4] The consent of the parties to a contract must be:
1. Free;
2. Mutual; and,
3. Communicated by each to the other.
Cal. Civil Code § 1565.

signs an instrument which on its face is a contract is deemed to assent to all its terms. A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." Marin Storage & Trucking, Inc. v. Benco Contracting and Eng'g, Inc., 89 Cal. App. 4th 1042, 1049 (2001); Izzi v. Mesquite Country Club, 186 Cal. App. 3d 1309, 1318-19 (1986) (abrogated on other grounds by Sandquist v. Lebo Automotive, Inc., 1 Cal. 5th 233, 250 (2016)) ("one who assents to a contract cannot avoid its terms on the ground he failed to read it before signing it.") Parties who sign a contract are responsible for the entirety of the agreement. Norcia v. Samsung Telecommunications America, LLC, 845 F.3d 1279, 1284 (9th Cir. 2017). No contract exists if the "writing does not appear to be a contract and the terms are not called to the attention of the recipient." Marin Storage & Trucking, 89 Cal. App. 4th at 1049-50. Moreover, "[a]n actual negotiation regarding every term has never been required for the formation of a contract. The existence of mutual assent is determined by objective criteria, not by one party's subjective intent. The test is whether a reasonable person would, from the conduct of the parties, conclude that there was a mutual agreement." Id. at 1050.

Here, Plaintiff does not dispute that he signed the IRA Application in 1995 and the Schwab One Application in 1997. Instead, as to the IRA Application[5], he asserts he merely signed where his investment advisor told him to sign or initial, (Dkt. No. 28-1, Cristo Decl. ¶ 2), and claims that he did not know what he signed. As to the Schwab One Application, he contends he visited a Schwab branch office to open a Schwab One brokerage account, was interviewed by a staff who typed his information on the Application and once completed, the staffer asked him to sign the application. (Id. ¶ 3.) No other contract or agreement was offered for him to sign. (Id.) However, failure to read or negotiate the

---

[5] Plaintiff argues that he has never seen pages 3 or 4 of the IRA application until 22 years later. (Dkt. No. 28-1, Cristo Decl. ¶ 2; Dkt. No. 24-2, Lundy Decl., Ex. A at 6-7.) However, while there is an arbitration provision on page 3, there is also an arbitration provision with Plaintiff's signature on page 2 which he does not dispute.

Agreements prior to signing does not negate the offer[6] or assent required for a binding contract. See Marin Storage & Trucking, 89 Cal. App. 4th at 1049.

Next, Plaintiff claims he was not a party to the IRA Application in 1995 since it was between Defendants and Neff, his investment advisor and the person who filled out the application, and he was merely a third party beneficiary. He contends that pages 3 and 4 of the IRA Application demonstrate that Neff and Defendants entered into a binding contract. (Dkt. No. 28 at 18.) Page 4 of the IRA Application is an agreement between Neff, Plaintiff's investment advisor and Schwab authorizing Neff to open an account and trade on behalf of Plaintiff, his client. However, Plaintiff's signature is on both Applications and no indication that he is merely a third party beneficiary.

Also, Plaintiff argues that the Applications are not binding contracts but are merely applications. The two documents are applications to open up an account at Schwab. Defendants reference them as "Applications." Despite the use of the word "application" on the documents, the course of dealings by the parties reveal that the parties entered into a binding contract.

In Marin Storage & Trucking, the court of appeal looked to the parties' course of conduct to determine whether the parties entered into a binding contract. Marin Storage & Trucking, 89 Cal. App. 4th at 1051-52. In Marin Storage & Trucking, the trial court held there was no mutual assent to establish a binding contract between a company that rented cranes and a crane operator, and a contractor as the "Work Authorization and Contract" appeared to merely be an invoice and served to acknowledge the hours logged by the crane operator, and further, the contract terms were never negotiated by the parties. Id. at 1050. The parties had a history of past dealings where the contractor telephoned the crane owner requesting a crane and crane operator for an hourly rate. Id. at 1046. At the end of the day, the crane operator filled out a form, "Work Authorization and Contract", indicating the

---

[6] As discussed later, filling out Defendants' account applications constitute offers to transfer assets in exchange for brokerage services. See Lopez v. Charles Schwab & Co., Inc., 118 Cal. App. 4th 1224, 1230 (2004).

number of hours he worked at the site. Id. The form would be verified and signed by the contractor's supervising employee at the site. Id. at 1047. The crane operator would give one copy to the contractor and the other copy to his office. Id. The crane provider would then mail the copy of the "Work Authorization and Contract" and an invoice to the contractor for payment. Id. Upon receipt, the contractor would send a check. Id. The question for the court was whether there was a binding contract that required the contractor to indemnify the crane provider as provided on the back page of the "Work Authorization and Contract." Id. The court of appeal held that the trial court erred and that the parties' conduct of signing the "Work Authorization and Contract" and then paying the invoice were "outward manifestations of assent by" the contractor confirming its acceptance of the contractual terms. Id. at 1052.

In Lopez, involving a similar type of account application as in this case, the court of appeal first concluded that filling out an application form to open a Schwab Account did not create a contract but "an offer to transfer assets to Schwab in exchange for brokerage services." Lopez v. Charles Schwab & Co., Inc., 118 Cal. App. 4th 1224, 1230 (2004) (noting that "I hereby request that [Schwab] open a brokerage account. . . . . I agree to read and be bound by the terms of the applicable Account Agreement" was an offer.) The court of appeal then held that because Schwab rejected the plaintiff's application for brokerage services and did not fund that account, no contract to arbitrate existed. Id. at 1232; see also Rubio v. Capital One Bank, 613 F.3d 1195, 1205 (9th Cir. 2010) (relying on Lopez and holding that a credit card solicitation was not an offer).

In this case, on the Schwab One Application similarly states, "I hereby request that [Schwab] open a Brokerage Account . . ." and constitutes an offer. (Dkt. No. 24-2, Lundy Decl., Ex. B at 10.) The IRA Application to open an account also constitutes an offer. See Rubio, 613 F.3d at 1205. Unlike Lopez, Schwab approved Plaintiff's applications as indicated in the approval section of both applications. (Dkt. No. 24-2, Lundy Decl., Ex. A at 4; Dkt. No. 24-2, Lundy Decl., Ex. B, at 9.) Moreover, there is no indication that Defendants rejected Plaintiff's applications and the FAC alleges certain transactions

8

between Plaintiff and Schwab regarding his accounts and in fact, Plaintiff states he is a client of Schwab. (Dkt. No. 8, FAC ¶¶ 28-33.) Defendants' opening of the accounts confirms their acceptance of Plaintiff's offer to open an account. Based on the course of dealings between Plaintiff and Defendants, the Court concludes that binding contracts exist, including a valid arbitration agreement.

## B. Scope of the Arbitration Provision

Defendants argue that all grievances stemming from the FAC arise out of transactions covered by the arbitration agreements. Plaintiff argues that his allegations are not subject to arbitration as they do not stem from his account relationship with Schwab, but rather concern Schwab's allegedly unlawful acts in responding to IRS summonses. (Id.)

Both arbitration provisions state that it covers "any controversy between [Plaintiff and Defendants] relating to [Applications] . . . or in any way arising from my relationship with Schwab. . . ." (Dkt. No. 24-2, Lundy Decl., Exs. A, B.) A provision that includes "any controversy" "relating to" or "in any way arising from [a] relationship with" are construed broadly. See Simula Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999) (the phrase "arising out of or relating to" in an arbitration agreement are construed broadly, and the factual allegations at issue "need only touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitration."); Larkin v. Williams, Woolley, Cogswell, Nakazawa Russell, 76 Cal. App. 4th 227, 230 (1999) (the phrase "[a]ny controversy or claim arising out of or relating to any provision of this [agreement] . . ." construed very broad.).

The FAC alleges claims concerning Defendants' disclosure of Plaintiff's account records beyond the scope that was requested by the IRS in a third-party summons seeking financial records for the 2002 tax period. (Dkt. No. 8, FAC ¶¶ 41, 50.) Instead of releasing financial records for the 2002 tax year, Defendants released financial records from 1995 through June 30, 2006. (Id.) The FAC allegations concern a dispute between Plaintiff and Defendants relating to Plaintiff's Schwab accounts and arise out of the relationship

between the two parties. Accordingly, the Court concludes that Plaintiff's claims fall within the arbitration provisions.

## C. Unconscionability

Plaintiff argues that even if there is a contract to arbitrate, it is procedurally and substantively unconscionable. Defendants disagree.

In California, a contract must be both procedurally and substantively unconscionable to be rendered invalid. Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 922 (9th Cir. 2013). The procedural component focuses on oppression, and surprise due to unequal bargaining power. Armendariz v. Fdn. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000). The substantive element focuses on "overly harsh" or "one-sided" results. (Id.) Courts apply a sliding scale where procedural and substantive unconscionability need not be present in the same degree such that a showing of greater substantive unconscionability will require less evidence of procedural unconscionability. Armendariz, 24 Cal. 4th at 114. However, both procedural and substantive unconscionability must be present "in order for the court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." Stirlen v. Supercuts, 51 Cal. App. 4th 1519, 1533 (1997). The party opposing arbitration bears the burden to demonstrate unconscionability. Sonic–Calabasas A, Inc. v. Moreno, 57 Cal. 4th 1109, 1148 (2013); Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC, 55 Cal. 4th 223, 247 (2012).

### a. Procedural Unconscionability

Plaintiff argues the arbitration clauses are procedurally unconscionable because they are contracts of adhesion and "Defendants intentionally reduced font size to be unreadable by Plaintiff – or most anyone else over 50 years old." (Dkt. No. 28 at 26.) Defendants argue that the applications are not contracts of adhesion because Plaintiff was free to obtain brokerage services from anywhere and nobody forced Plaintiff to seek Defendants' services. (Dkt. No. 29 at 6.) Defendants posit that even if the agreements were contracts of adhesion, Plaintiff did not express any concern over the agreements when Plaintiff

signed the Account Applications. (Id. at 7.) Defendants also argue there were no surprises here because the the arbitration clauses are in bold and right above the signature lines. (Id.)

Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." Pinnacle Museum Tower Ass'n, 55 Cal. 4th at 246 (citing Armendariz, 24 Cal. 4th at 114). "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice," while "[s]urprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position." Serpa v. California Surety Investigations, Inc., 215 Cal. App. 4th 695, 703 (2013) (citations and quotations omitted); see also Mercuro v. Superior Court, 96 Cal. App. 4th 167, 174 (2002) ("procedural unconscionability focuses on the oppressiveness of the stronger party's conduct").

In analyzing procedural unconscionability, the court first focuses on whether the contract was one of adhesion or whether there was oppression. See Armendariz, 24 Cal. 4th at 114; Gatton v. T-Mobile USA, Inc., 152 Cal. App. 4th 571, 582 (2007) ("Whether the challenged provision is within a contract of adhesion pertains to the oppression aspect of procedural unconscionability."). A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Armendariz, 24 Cal. 4th at 113. Under California law, a contract of adhesion has an element of procedural unconscionability because it is "presented on a take-it-or-leave-it basis and [is] oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'" Nagrampa v. MailCoups Inc., 469 F.3d 1257, 1281 (9th Cir. 2006).

Here, the Applications are standard form documents presented to all consumers and are presented on a take-it-or-leave-it basis"; however, on the other hand, Plaintiff was free to seek brokerage services from any institution, and willingly sought out Defendants and agreed to Defendants' applications without any pressure by Defendants. Therefore, there

is some procedural unconscionability due to the adhesive nature of the form applications but, an adhesive contract, alone, is not sufficient to render the arbitration clauses to be invalid. See Esquer v. Education Mgmt. Corp., --F. Supp. 3d--, 2017 WL 5194635, at *2 & (S.D. Cal. 2017) ("use of an adhesion contract establishes only some degree of procedural unconscionability and is not itself a ground for finding that a contract, or one of its provisions, is unenforceable.").

Next, as to surprise, Plaintiff claims that he was unable to read the tiny font size of the arbitration provisions. The font size of the arbitration provisions is tiny but is similar to the font size as to other terms and conditions in the applications. The arbitration provisions are in bold and are not embedded in the contract and hidden in a "prolix printed form", see Serpa, 215 Cal. App. 4th at 703, but are located right above the signature lines of the applications. See Molina v. Scandinavian Designs, Inc., No. 13cv4256 NC, 2014 WL 1615177, at *7 (N.D. Cal. Apr. 21, 2014) (amount of procedural unconscionabilty is limited by the fact that the arbitration agreement was not buried in a lengthy contract but was rather presented as a separate two page document). To the extent the tiny font size rendered the arbitration a surprise, it establishes some procedural unconscionability.

Therefore, Plaintiff has demonstrated some "oppression or surprise" in the application process. When there is a "low level" of procedural unconscionability, Plaintiff must demonstrate a substantial amount of substantive unconscionability. See Marin Storage & Trucking, 89 Cal. App. 4th at 1056 ("[i]n light of the low level of procedural unfairness . . . a greater degree of substantive unfairness than has been shown here was required before the contract could be found substantively unconscionable."); Woodside Homes of Cal., Inc. v. Superior Court, 107 Cal. App. 4th 723, 730 (2003) (because plaintiff home buyers were not unsophisticated or lacking in choice, they established only a "low level" of procedural unconscionability and were obligated to establish "a high level of substantive unconscionability.")

/ / / /

/ / / /

### b. Substantive Unconscionability

Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create an "overly harsh" or "one-sided" result. Armendariz, 24 Cal. 4th at 114; see also Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071 (2003). "[T]he paramount consideration in assessing conscionability is mutuality." Abramson v. Juniper Networks, Inc., 115 Cal. App. 4th 638, 657 (2004). "A contract is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be "so one-sided as to 'shock the conscience.'" Pinnacle, 55 Cal. 4th at 246.

Plaintiff argues that Defendants' arbitration provision is substantively unconscionable because it allegedly restricts Plaintiff's right to discovery. (Dkt. No. 28 at 28.) Plaintiff also contends that Defendants' arbitration provision is substantively unconscionable because the provision allegedly demands Plaintiff bear the arbitration fees and costs. (Id.) Plaintiff posits that Defendants are much better equipped to pay these costs. (Id.) Defendants argue that the arbitration agreements here "are not one-sided" as the arbitration gives Plaintiff and Defendants the same set of arbitration rules. (Dkt. No. 29 at 7.) Defendants assert the arbitration rules have also been approved by the Securities and Exchange Commission ("SEC"). (Id.)

Here, Plaintiff has not demonstrated that the arbitration provisions do not apply to both Plaintiff and Defendants equally or that the provisions are "overly harsh" or "one-sided." See Stirlen, 51 Cal. App. 4th at 1537-42 (employee was subject to inherent shortcomings of arbitration-limited discovery, limited judicial review, limited procedural protections and significant damage limitations while employer was not subject to these disadvantageous limitations and had written in the agreement special advantages); Kinney v. United HealthCare Servs., Inc., 70 Cal. App. 4th 1322, 1332 (1999) (arbitration to compel the employee but not the employer to submit claims to arbitration was unconscionable). The arbitration agreements subject both parties to the same set of rules.

Moreover, contrary to Plaintiff's argument, discovery is available under the FINRA[7] rules such as document production, depositions, and written requests. See FINRA, Code of Arbitration Procedure, Part V, Rules 12505-12514.

As to the arbitration fees and costs, Plaintiff speculatively argues that the arbitration provisions may require him to pay arbitration fees and costs as they are silent as to who pays what. However, speculation as to the costs of arbitration is not sufficient to render an arbitration provision unenforceable. See Green Tree Fin. Corp.-Alabama, 531 U.S. at 91 ("we lack . . . information about how claimants fare under Green Tree's arbitration clause." The record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable. The "risk" that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.). Accordingly, the Court concludes that Plaintiff has not demonstrated substantive unconscionability.

Since Plaintiff has failed to meet his burden demonstrating both procedural and substantive unconscionability, the arbitration provisions are enforceable. See Stirlen, 51 Cal. App. 4th at 1533.

## C. Motion to Stay

Section 3 of the FAA provides that, where a dispute is subject to arbitration under the terms of a written agreement, the district court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Accordingly, the Court stays the case until the completion of arbitration.

## D. Attorney's Fees and Costs

Defendants also seek attorney's fees and costs for Plaintiff's refusal to dismiss the FAC and submit the claims to arbitration because it was clear that Plaintiff was bound by the arbitration agreements. Plaintiff disagrees that he refused to dismiss the case but

---

[7] The parties do not dispute that they are subject to arbitration before the Financial Industry Regulatory Authority ("FINRA").

informed counsel that he did not have sufficient time to review the documents received by defense counsel before his imposed deadline.

Defendants rely on Gonick v. Drexel Burnham Lambert, Inc., 711 F. Supp. 981, 987 (N.D. Cal. 1988) which involved a federal securities case where the defendant sought sanctions under Rule 11 because the plaintiff failed to accept defendant's offer to proceed to arbitration, even though the defendant provided legal authorities to plaintiff and tried to avoid filing the motion to compel arbitration. Id. at 987. In Gonick, there was recent settled law that an arbitration provision on Securities Exchange Act claims was enforceable. Id. at 987. Here, Defendants only argue that because Plaintiff was bound by the arbitration provisions and refused to voluntarily submit his claims to arbitration, they are entitled to fees under Gonick. However, unlike Gonick, Defendants have not demonstrated that they complied with Rule 11 or that there was clear, established law that Plaintiff's claims would be subject to arbitration. In his opposition, Plaintiff has presented plausible arguments why the arbitration provisions are not binding or enforceable. Thus, the Court DENIES Defendants' request for sanctions as unsupported.

**Conclusion**

Based on the above, the Court GRANTS Defendants' motion to compel arbitration and STAYS the case pending arbitration.[8] The parties shall submit a joint status report within five (5) days of a decision by the arbitrator.

IT IS SO ORDERED.

Dated: April 11, 2018

Hon. Gonzalo P. Curiel
United States District Judge

---

[8] At the hearing, Plaintiff objected to the supplemental declaration that was attached to Defendant's reply. (Dkt. No. 29-1.) The supplement declaration includes copies of the 1997 Schwab One Account Agreement and the current version of the Schwab One Account Agreement; however, the Court did not consider those documents in ruling on the motion to compel arbitration. Therefore, the Court overrules Plaintiff's objection.