1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CONSTANTINE GUS CRISTO,

Plaintiff,

v.

THE CHARLES SCHWAB
CORPORATION; SCHWAB
HOLDINGS, INC.; CHARLES
SCHWAB & CO., INC.; CHARLES
SCHWAB BANK; and CHARLES
SCHWAB INVESTMENT
MANAGEMENT, INC.,

Defendants.

Case No.: 17-cv-1843-GPC-MDD

**ORDER GRANTING DEFENDANTS'
MOTION TO CONFIRM
ARBITRATION AWARD AND
DENYING PLAINTIFF'S MOTION
TO VACATE ARBITRATION
AWARD**

**[Dkt. Nos. 51, 57.]**

Before the Court is Defendants Charles Schwab Corporation, Schwab Holdings, Inc., Charles Schwab & Co., Inc., Charles Schwab Bank, and Charles Schwab Investment Management, Inc.'s (collectively "Defendants") motion to confirm arbitration award and Plaintiff Constantine Gus Cristo's ("Plaintiff") motion to vacate arbitration award. (Dkt. Nos. 51, 57.) Both parties filed oppositions and replies. (Dkt. Nos. 57, 58, 59.) A hearing was held on December 17, 2021. (Dkt. No. 60.) Plaintiff appeared pro se, and Stacey Garrett, Esq. appeared on behalf of Defendants. (*Id.*) Based on the reasoning below, the Court GRANTS Defendants' motion to confirm arbitration award and DENIES Plaintiff's

motion to vacate the arbitration award.

## Background

On November 6, 2017, Plaintiff, proceeding *pro se*, filed a First Amended Complaint[1] ("FAC") alleging grievances relating to Plaintiff's Schwab accounts stemming from Defendants' production of Plaintiff's financial records to the Internal Revenue Service ("IRS") in 2006. (Dkt. No. 8.) The FAC alleges violations of the Right to Privacy Act, 12 U.S.C. §§ 3403, 3404(c), 3405(2), 3407(2), 3410, 3412(b); violations of 18 U.S.C. § 1519; violations of 18 U.S.C. § 241 & § 245(b)(l)(B); violations of 18 U.S.C. § 872; violations of 18 U.S.C. § 1001(a); and violations of 18 U.S.C. § 1341. (*Id.*) On April 11, 2018, the Court granted Defendants' motion to compel arbitration and stayed the case. (Dkt. No. 31.) The Court directed that the parties submit a joint status report within five days of the arbitrator's decision. (*Id.* at 15.[2]) Because no joint status report was ever filed, on August 21, 2019, the Court directed the parties to submit a joint status report as to the status of the arbitration. (Dkt. No. 32.) Both parties' status reports indicated that arbitration had not yet commenced, (Dkt. Nos. 33, 34); therefore, on September 12, 2019, the Court directed Plaintiff to initiate arbitration within 30 days. (Dkt. No. 35.) On September 17, 2019, Plaintiff informed that Court that he filed, "under protest", an arbitration statement of claim with the Financial Industry Regulatory Authority ("FINRA"). (Dkt. No. 36.)

In Plaintiff's status report, he explained that shortly after the Court's order compelling arbitration, on April 12, 2018, Plaintiff wrote to the President and CEO of FINRA requesting FINRA's intervention regarding FINRA Rule 12206(a) which states that "[n]o claim shall be eligible for submission to arbitration under the Code where six years elapsed from the occurrence of the event giving rise to the claim" and requested a letter of ineligibility to provide to this Court. (Dkt. No. 34 at 2.) On April 13, 2018,

---

[1] The original complaint was filed on September 12, 2017. (Dkt. No. 1, Compl.)
[2] Unless otherwise indicated, page numbers are based on the CM/ECF pagination.

Plaintiff also submitted a FINRA Investor Complaint to investigate allegations of deceptive and illegal acts of Defendants. *(Id.* at 2.) Because he was not successful with his letter and Investor Complaint as well as his application for review with the Securities and Exchange Commission related to FINRA's oversight, on October 2, 2019, Plaintiff filed a complaint in this Court against the U.S. Securities and Exchange Commission ("SEC"), Financial Industry Regulatory Authority ("FINRA"), Jay Clayton ("Mr. Clayton"), in his official capacity as Chairman of the SEC, William Barr ("Mr. Barr"), in his official capacity as the United States Attorney General, and Robert W. Cook ("Mr. Cook") in his official capacity as President and Chief Executive Officer of FINRA in Case No. 19cv1910-GPC(MDD). (Case No. 19cv1910-GPC(MDD), Dkt. No. 1, Compl.) In that complaint, Plaintiff alleged improper FINRA investigation of his Investor Complaint, improper SEC review of FINRA's investigation as well as inconsistent statements/advisements by FINRA and the SEC concerning his attempts to obtain a ruling of ineligibility for arbitration and seeking to return the arbitrable issues back to this Court. *(Id*.) On May 26, 2020, the Court granted FINRA and Mr. Cook's motion to dismiss and denied Plaintiff's motion to strike. *(Id*., Dkt. No. 28.) In the order, the Court noted that Plaintiff was attempting to undermine the Court's prior order compelling arbitration and explained that "[o]nce the arbitration panel issues its decision, Plaintiff may seek to vacate or confirm the arbitration award." *(Id*., Dkt. No. 29 at 19.) On July 17, 2020, the Court granted the SEC, Mr. Clayton and Mr. Barr's motion to dismiss for lack of jurisdiction. *(Id.*, Dkt. No. 35.) In that order, the Court also stated that Plaintiff's claims challenging the arbitration were not ripe and that once the arbitration panel issues its decision, he may seek to vacate or confirm the arbitration award. *(Id.* at 12; *see also* Case No. 19cv1910-GPC(MDD), Dkt. No. 29 at 18-19.)

Despite the Court's direction to complete the arbitration, on June 21, 2021, Plaintiff, in this case, filed an ex parte application for a temporary restraining order ("TRO") enjoining the FINRA Panel in FINRA Case No. 19-02822 from convening a three-day evidentiary hearing via Zoom set for June 28-30, 2021. (Dkt. No. 40.) After a telephonic hearing was held on June 25, 2021, (Dkt. No. 46), the Court denied Plaintiff's ex parte

application to enjoin the evidentiary hearing.  (Dkt. No. 47.)

While three-days were allotted for the evidentiary hearing, the arbitration panel conducted a half-day evidentiary hearing on June 28, 2021.  (Dkt. No. 51-4, Garrett Decl., Ex. H, Evid. Hearing Trans.)  On August 6, 2021, the arbitration panel issued its ruling in favor of Defendants and against Plaintiff.  (Dkt. No. 51-4, Garrett Decl., Ex. I.)  The Award stated, "[a]fter considering the pleadings, the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:  1. Claimant's claims are denied in their entirety.  2. Any and all claims for relief not specifically addressed herein, including any requests for punitive damages, are denied."  (*Id.* at 342.)  Plaintiff was also assessed $100 for the discovery related motion fees and $5,600 for four hearing session fees.  (*Id.* at 343.)

Defendants timely filed their motion to confirm arbitration award and Plaintiff timely filed his motion to vacate the arbitration award and both motions are fully briefed. (Dkt. Nos. 51, 57, 58, 59.)

## Discussion

## I.   Motion to Confirm Arbitration

Under the Federal Arbitration Act ("FAA"), "any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award."  9 U.S.C. § 9.  At that time "the court must grant such an order unless the award is vacated, modified, or corrected."  *Id.*  The court may vacate an arbitration award, upon the application of any party to the arbitration,

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §§ 10(a)(1)-(4).

Under the FAA, a court's "review of the actual award is 'both limited and highly deferential.'" *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 730 (9th Cir. 2006) (quoting *Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004)). "To protect the overall purpose of arbitration and avoid any tendency of a court to impute its own strict and rigid practices onto arbitration proceedings, Congress has limited the ability of federal courts to review arbitration awards." *Id.* at 731 (citing *Pack Concrete, Inc. v. Cunningham*, 866 F.2d 283, 285 (9th Cir. 1989) (permitting a plenary review of arbitration would undermine Congress's policy of favoring arbitration as an expeditious and relatively inexpensive means of resolving disputes)); *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) ("§ 10 does not sanction judicial review of the merits of arbitration awards.").

An arbitration award may be vacated only if it is "completely irrational" or "constitutes manifest disregard of the law." *Poweragent Inc.*, 358 F.3d at 1193 (quoting *Coutee v. Barington Capital Group*, 336 F.3d 1128, 1132–33 (9th Cir. 2003)). "'Manifest disregard of the law' means something more than just an error in the law or a failure on the part of the [arbitrator] to understand or apply the law.  It must be clear from the record that the [arbitrator] (1) recognized the applicable law and then (2) ignored it." *Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995). "Completely irrational . . . is extremely narrow and is satisfied only 'where [the arbitration decision] fails to draw its essence from the agreement.'" *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (adopting Eighth Circuit definition).

Therefore, "[n]either erroneous legal conclusions nor unsubstantiated factual findings justify a federal court review of an arbitral award[.]" *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009) (internal quotation omitted) (quoting *Kyocera v. Prudential-Bache T Servs.*, 341 F.3d 987, 994 (9th Cir. 2003) (*en banc*)); *A.G. Edwards*

*v. McCollough,* 967 F.2d 1401, 1403 (9th Cir. 1992) ("courts should not reverse even in the face of erroneous interpretations of the law."). Rather, grounds for vacating an award are limited to those specified by statute. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 584 (2008) (holding Section 10 provides the FAA's exclusive grounds for vacatur of an arbitration award).

Moreover, "arbitrators are not required to state the reasons for their decisions." *A.G. Edwards & Sons, Inc.,* 967 F.2d at 1403 (citing *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation to the court to give their reasons for an award.")); *Wilko v. Swan,* 346 U.S. 427, 436 (1953), *overruled in part on other grounds by Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477 (1989) (An arbitrators' "award may be made without explanation of their reasons and without a complete record of their proceedings[.]"). It is presumed that arbitrators "took a permissible route to the award where one exists. *Id.* at 1403. "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *United Steelworkers,* 363 U.S. at 598.

In this case, Plaintiff seeks to vacate the arbitration award under all four provisions of Section 10(a). He bears the burden establishing grounds to vacate the arbitration award. *See U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.,* 591 F.3d 1167, 1173 (9th Cir. 2010) ("The burden of establishing grounds for vacating an arbitration award is on the party seeking it.").

## A.   Section 10(a)(1) –Award was Procured by Corruption, Fraud or Undue Means

Plaintiff asserts eight reasons why the award was procured by fraud. (Dkt. No. 57-1 at 19-23.) Defendants respond that Plaintiff has failed to show that the award was procured by corruption, fraud or undue means. (Dkt. No. 58 at 11-12.) Moreover, because these issues were brought to the attention of the arbitrator, Plaintiff fails to meet the standard for vacatur under section 10(a)(1). (*Id.)*

6

Section 10(a)(1) allows a court to vacate an award "procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). Under § 10(a)(1), the party challenging the award must show the fraud was "(1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence." *Lafarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1339 (9th Cir. 1986) (citing *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir.), *cert. denied,* 459 U.S. 990 (1982)). This "requires a showing that the undue means caused the award to be given." *Id*. at 1403; *see also PaineWebber Group, Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 994 (8th Cir. 1999) ("[T]here must be some causal relation between the undue means and the arbitration award."); *Bonar v. Dean Witter Reynolds, Inc.,* 835 F.2d 1378, 1385 (11th Cir. 1988) (arbitration award was procured through undue means where "[t]he arbitrators' written award, although brief, reflects the influence of [the fraudulent] testimony"). "An appearance of impropriety is not sufficient to establish fraud or bias under the FAA." *Int'l Petroleum Prods and Additives Co., Inc. v. Black Gold, S.A.R.L.*, 418 F. Supp. 3d 481, 488 (N.D. Cal. 2019) (citing *Arizona Elec. Power Co-op. v. Berkeley*, 59 F.3d 988, 993 (9th Cir. 1995)). Moreover, "undue means" should not be interpreted to apply to actions of counsel that are merely legally objectionable. *See A.G. Edwards*, 967 F.2d at 1403-04 (defining "undue means" as conduct "that is immoral if not illegal"; holding that the term does not apply to defendant's raising of frivolous defenses during arbitration, or "sloppy or overzealous lawyering"). Finally, the fraud, corruption or undue means must not have been known during the arbitration. *See A.G. Edwards*, 967 F.2d at 1404 ("where the fraud or undue means is not only discoverable, but discovered and brought to the attention of the arbitrators, a disappointed party will not be given a second bite at the apple.").

After review of Plaintiff's eight reasons and supporting documents to support his fraud arguments, the Court concludes that Plaintiff has not demonstrated that the arbitration award was procured by fraud, undue means or corruption as contemplated by

governed law and merely challenges the procedural and substantive rulings of the arbitration panel.  Specifically, all issues were known to Plaintiff and raised during the arbitration, and he is simply re-litigating issues raised before the arbitrators.  Under the FAA, the Court is barred from conducting a plenary review of the arbitrators' decision.  *See American Postal Workers Union AFL–CIO v. United States Postal Serv*., 682 F.2d 1280, 1285 (9th Cir. 1982) ("Federal courts will not undertake plenary review of the merits of an arbitration award.").

As a threshold issue, the Court must address Plaintiff's position on the eligibility of his claims under FINRA Rule 12206(a) because this issue has been disputed by Plaintiff during the entirety of the arbitration and is the reason for many of Plaintiff's argument on vacating the award.  FINRA Rule 12206(a) provides that "[n]o claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim.  The panel will resolve any questions regarding the eligibility of a claim under this rule."  FINRA Rule 12206(c) provides that "[t]he rule does not extend applicable statutes of limitations; nor shall the six-year time limit on the submission of claims apply to any claim that is directed to arbitration by a court of competent jurisdiction upon request of a member or associated person."  In its order compelling arbitration, the Court concluded that eligibility under FINRA Rule 12206(c) is for the arbitrator, not the Court.  (*See* Dkt. No. 31 at 5 n.2); *see e.g., Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 85 (2002) ("the applicability of the NASD [six year] time limit rule is a matter presumptively for the arbitrator, not for the judge."); *see also Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S. Ct. 524, 527 (2019) (under the FAA, question of who decides arbitrability is itself a question of contract and parties are allowed to agree that an arbitrator, rather than a court, may resolve threshold arbitrability questions).

The gravamen of the FAC concerns Defendants' disclosure of Plaintiff's financial records to the IRS in response to an IRS summons that occurred in 2006.  (*See* Dkt. No. 8, FAC.)  Plaintiff did not learn of the alleged improper disclosures until 2016.  (*Id.*)

Because the event giving rise to Plaintiff's claims occurred more than six years ago, Plaintiff insists his claims are ineligible for arbitration under Rule 12206(a).

When Plaintiff learned about Defendants' disclosure of his financial records to the IRS, he reached out to FINRA, and on October 20, 2016, a FINRA Principal Investigator informed Plaintiff that his claims against Schwab based on the IRS summons issued in 2006 were ineligible for FINRA arbitration pursuant to Rule 12206(a) and directed him to a court of competent jurisdiction. (Dkt. No. 57-3, App'x A[3], at pp. A-1 to A-2.) Therefore, Plaintiff filed the complaint in this case. (Dkt. No. 1, Compl.) Defendants then moved to compel arbitration which the Court granted and the matter was returned to FINRA. (Dkt. No. 57-3, App'x A at pp. A-2 to A-3.)

During the arbitration, Plaintiff challenged the eligibility of his claims in numerous filings. On March 26, 2021, the panel held a three-hour telephonic prehearing conference to address several motions, including Plaintiff's motion for panel to determine eligibility of claims for arbitration, (Dkt. No. 58-2, Garrett Decl., Ex. AA at 222) and his unopposed motion to dismiss because he claimed the case was ineligible for arbitration, (Dkt. No. 58-2, Garrett Decl., Ex. K at 25). (Dkt. No. 51-4, Garrett Decl., Ex. G at 237-39; *see also* Dkt. No. 51-2, Garrett Decl. ¶ 8.) On March 29, 2021, the panel ruled, relying on Rule 12206(c) that the case was eligible for arbitration because it had been directed to arbitration by a court of competent jurisdiction, (Dkt. No. 51-4, Garrett Decl., Ex. G at

---

[3] Defendants object and ask the Court to strike Plaintiff's filing of 176 pages of argument when the Court granted Plaintiff leave to file no more than 35 pages for his motion to vacate and opposition to Defendants' motion. (Dkt. No. 58 at 9 n.1.) Plaintiff disagrees arguing he did not exceed the 35 pages limit and that the additional pages are a compilation of evidence to support his arguments just as Defendants attached 369 pages of exhibits to their filing. (Dkt. No. 59 at 3.) In addition to the 35-page brief, Plaintiff also submitted Appendix A, which consists of 151 pages of supplemental argument as well as Exhibit B, which contains 714 pages of evidentiary support. (*See* Dkt. Nos. 51-3 to 51-5.) Contrary to Plaintiff's argument, Exhibit A contains background and more detailed arguments concerning his 27 arguments supporting his motion to vacate while Exhibit B contains evidentiary support. Due to Plaintiff's pro se status and because Exhibit A provides clarification as to Plaintiff's numerous arguments, the Court will not strike and considers Exhibits A and B.

238), and denied Plaintiff's unopposed motion to dismiss based on eligibility under Rule 12504(c)[4] due to its ruling that his claims were eligible for arbitration.  (*Id.*)

Based on this history, Plaintiff claims that FINRA entrapped him because even though the panel ruled that his claims were eligible for arbitration, the FINRA investigator initially determined that his claims were not eligible and directed him to file his claims in a court of competent jurisdiction.  (Dkt. No. 57-3, App'x A at pp. A-2 to A-3.)  He also alleges Defendants were complicit because even though they knew his claims were ineligible, they still moved to compel arbitration without informing the Court of the eligibility issue.  (*Id.*)  Additionally, Plaintiff argues that the panel failed to comply with the Court's order compelling arbitration by failing to first, as a threshold issue, determine whether the claims are eligible under Rule 12206(a).  (Dkt. No. 57-1 at 25; Dkt. No. 57-3, App'x A at pp. A64 to A67.)  Instead, the panel waited two years and merely adopted Defendants' argument that the claims were eligible under Rule 12206(c), not Rule 12206(a); therefore, he maintains that the panel has not yet ruled on eligibility under Rule 12206(a).  (Dkt. No. 57-3, App'x A at pp. A-65 to A-66.)

Finally, on the issue eligibility, Plaintiff claims FINRA Rule 2268(g) nullifies FINRA Rule 12206(c).  (Dkt. No. 57-1 at 21; Dkt. No. 59 at 21.)  FINRA Rule 2268(g) states that "[t]he provisions of this Rule shall become effective on May 1, 2005. The provisions of paragraph (c) shall apply to all members as of the effective date of this Rule regardless of when the customer agreement in question was executed. Otherwise, agreements signed by a customer before May 1, 2005 are subject to the provisions of this Rule in effect at the time the agreement was signed."  Relying on this provision, Plaintiff argues that the FINRA Rule in existence at the time he opened his accounts with Defendants in 1995 and 1997 should apply.  However, Rule 2268(g) is specific to Rule 2268(g) as it states "this Rule" and not to any other FINRA Rule.  Moreover, even if

---

[4]FINRA Rule 12504(c), Motions to Dismiss Based on Eligibility, provides that "[a] motion to dismiss based on eligibility filed under Rule 12206 will be governed by that rule."

FINRA was required to use the rules as it was in 1995 and 1997, Plaintiff fails to provide what the FINRA rule was at that time.  Instead, he conclusorily argues that FINRA Rule 12206(c) did not include the language it now contains.[5]  (Dkt. No. 57-1 at 22.)  Thus, Plaintiff's argument concerning the applicability of Rule 12206(c) is not supported.

Plaintiff also objects to the panel's denial of his motion to dismiss because it was not opposed by Defendants and relies on S.D. Cal. Local Rule 7.1(f)(3)(c) providing that if "an opposing party fails to file the papers in the manner required by Civil Local Rule 7.1.e.2, that failure may constitute a consent to the granting of a motion or other request for ruling by the Court."  (Dkt. No. 57-1 at 13; Dkt. No. 59 at 10.)  As an initial matter, the Southern District of California's Civil Local Rules do not apply to FINRA arbitration. Moreover, the Court may not review the substantive merits of a panel's ruling even if erroneous.  *See Kyocera*, 341 F.3d at 994.  Lastly, because the panel determined that Plaintiff's claims were eligible for arbitration, it could not grant Plaintiff's motion to dismiss based on eligibility, even if it was unopposed.

Plaintiff's argument relies on the idea that a FINRA representative's advice to him binds FINRA and Defendants as to preclude them from seeking arbitration or avoiding the six-year time limit provided in FINRA Rule 12206.  Plaintiff does not offer any case to support this proposition and the Court has not found any authority in support of this argument.  As such, Defendants were entitled to raise FINRA Rule 12206(c) before the arbitration panel and the arbitrator's decision to rely upon it does not evidence corruption, fraud, or undue means.

The Court recognizes Plaintiff's dissatisfaction with the panel's eligibility rulings; however, the Court may not second-guess the panel's interpretation of FINRA Rule 12206(a), even if erroneous.  *See Kyocera*, 341 F.3d at 994 ("Neither erroneous legal

---

[5] According to the Court's research, the predecessor to FINRA Rule 12206(c) was FINRA Rule 10304 which contains similar language to Rule 12206(c).  *See* https://www.finra.org/rules-guidance/rulebooks/retired-rules/10304.  However, it is not clear when FINRA Rule 10304 was in effect.

conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute"); *Oshidary v. Purpura-Andriola*, No. C 12–2092 SI, 2012 WL 2135375, at *5 (N.D. Cal. June 12, 2012) ("The Panel was free to interpret Rule 12206 as it saw fit . . . ."); *Huitt v. Wilbanks Sec., Inc*., Civil Action No. 17–cv–00919–STV, 2017 WL 4697502 , at *5 (D. Colo. Oct. 19, 2017) (citing *Mid–Ohio Sec. Corp. v. Estate of Burns*, 790 F. Supp.2d 1263, 1271–72 (D. Nev. 2011) ("Because Rule 12206 is not a strict rule of eligibility, but a question for the arbitrators more akin to a statute of limitations, the arbitrators were free to interpret the rule as they saw fit, including adding in tolling provisions or a discovery rule.").  Therefore, Plaintiff's numerous arguments concerning the Panel's ruling or failure to timely rule on the eligibility of his claim under FINRA Rule 12206(a) are not subject to vacatur.

Under the FAA, as long as Plaintiff was given notice, an opportunity to present his issues and evidence, due process has been met.  *See Sunshine Mining Co. v. United Steelworkers of America*, 823 F.2d 1289, 1295 (9th Cir. 1987) (FAA requires only that the parties had notice, an adequate opportunity to present their evidence and arguments so that the arbitrators can make an informed decision).  The Court now addresses Plaintiff's eight arguments under § 10(a)(1).

> **1.** **"FINRA knowing entrapped Plaintiff to discourage him from filing a claim", (Dkt. No. 57-1 at 19; *see also* Dkt. No. 57-3, App'x A at pp. A-1 to A-8.)**

Plaintiff's first argument concerns eligibility of the claims, which the Court just previously discussed, is not a basis for vacatur.  *See Kyocera*, 341 F.3d at 994 ("Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute"); *Oshidary,* 2012 WL 2135375, at *5 ("The Panel was free to interpret Rule 12206 as it saw fit . . . .").  Moreover, this issue was raised and known to the panel and does not demonstrate that the award was procured by fraud, corruption or undue means.  *See A.G. Edwards*, 967 F.2d at 1402 (no fraud "because all the alleged misstatements had been pointed out to the arbitrators").

1

2.      **"Both the original panel and its replacement refused to acknowledge or address the primary allegation against the Defendants" (Dkt. No. 57-1 at 19-20**; *see also* **Dkt. No. 57-3, App'x A at pp. A-9 to A-12.)**

2

3

4

5      Plaintiff next argues that both panels[6] failed to address and investigate Defendants'

6   violation of 12 U.S.C. § 3403(a) when they improperly disclosed to the IRS Plaintiff's

7   financial records for tax years 1995-2001, 2003-2005 even though the IRS summons only

8   sought one tax year, 2002.  (Dkt. No. 57-1 at 19-20; Dkt. No. 57-3, App'x A at pp. A-9 to

9   A-12.)  Defendants respond that the panel specifically denied Plaintiff's claims.  (Dkt.

10   No. 58 at 13.)  In reply, Plaintiff disagrees arguing the Award says nothing about it.

11   (Dkt. No. 59 at 15-16.)

12      "The scope of the arbitrator's authority is limited to the issue submitted to him by

13   the parties."  *Sunshine Mining Co.*, 823 F.2d at 1294.  In the arbitration, Plaintiff's

14   statement of claim alleged the following six claims: 1) "FINRA Arbitrators are not

15   Officers of the United States"; 2) "FINRA Arbitration Would Violate Claimant's Fourth

16   Amendment Rights"; 3) "FINRA Arbitration Would Violate the U.S. Constitution's Due

17   Process Clause"; 4) "FINRA Arbitration Panel Not Authorized to Rule on RFPA

18   Violations"; 5) "FINRA Rule 12206(c) Violates Equal Protection Clause; and 6) FINRA

19   and SEC Failed to Address CSC's Deceptive IRA Application."  (Dkt. No. 51-3, Garrett

20   Decl., Ex. A at 30-59.)  The prayer for relief sought a declaration that his claims are

21   ineligible for FINRA arbitration in order that Plaintiff may prosecute his claims in district

22   court.  (*Id.* at 59.)  While the statement of claim does not allege a claim for violations of

23   ────────────────

24   [6] FINRA appointed three arbitrators pursuant to its procedures.  (Dkt. No. 51-2, Garrett Decl. ¶ 7.)
Plaintiff challenged two of the appointed arbitrators, Barbara Zak and James Estes, and they were

25   removed in September 2020 and December 2020, respectively.  (*Id.*)  The third arbitrator, Mark Lee,
withdrew in January 2021.  (*Id.*)  Pursuant to FINRA's procedures for appointing

26   replacement arbitrators, FINRA appointed Robert Rosen (Public Arbitrator, Presiding Chairperson) to
the panel in September 2020, after the original chairperson was removed.  In January 2021 (after the

27   removal of Mr. Estes and the withdrawal of Mr. Lee), FINRA appointed replacement arbitrators Thomas
L. Marshall, Esq. (Public Arbitrator), and Sally G. Williams, Esq. (Public Arbitrator) to serve on the

28   arbitration panel.  (*Id.*)

1    the Right to Privacy Act, the arbitration award recognized his underlying claim.  (Dkt.

2    No. 51-4, Garrett Decl., Ex. I.)  The Award states that Plaintiff's "causes of action relate

3    to Schwab producing Claimant's financial documents in response to a summons from the

4    Internal Revenue Service ("IRS")."  (Dkt. No. 51-4, Garrett Decl., Ex I at 341.)  In its

5    ruling, the panel determined that "Claimant's claims are denied in their entirety."  (*Id.* at

6    342.)

7            Moreover, contrary to Plaintiff's argument, the arbitrators do not need to articulate

8    reasons for the denial.  *See A.G. Edwards*, 967 F.2d at 1403 ("arbitrators are not required

9    to state the reasons for their decisions.").  Finally, under § 10(a)(1), Plaintiff has failed to

10   demonstrate that the Award was procured by fraud, corruption or undue means.  Thus,

11   this argument is without merit.

> ### 3. "The panels accepted, without question or investigation, counsels' bizarre theory to excuse their unlawful disclosure of Plaintiff's entire financial history to the IRS" (Dkt. No. 57-1 at 20-21; *see also* Dkt. No. 57-3 at pp. A-13 to A-17.)

15           Plaintiff claims the panel accepted Defendants' misrepresentations and reasons for

16   disclosing Plaintiff's financial records by granting them leave to amend their answer and

17   denying Plaintiff's claim.  (Dkt. No. 57-3, App'x A at pp. A-13 to A-17.)  Defendants

18   respond that an arbitrator's decision of accepting or rejecting a party's argument is not

19   grounds to vacate.  (Dkt. No. 58 at 13-14.)  The Court agrees with Defendants.  Plaintiff

20   is dissatisfied with the panel's ruling granting Defendants' leave to amend their answer,

21   and essentially seeks reconsideration of the panel's decision.  However, an arbitrator's

22   decision on whether to grant leave to amend is not a basis for vacating an award.  *See*

23   *A.G. Edwards*, 967 F.2d at 1403-04 (offering of defenses in arbitration does not

24   constitute "undue means").  Moreover, Plaintiff has not demonstrated that there was any

25   fraud, corruption or undue means in procuring the award.  Thus, this argument fails to

26   support vacatur.

4.     **"The Panel refused to confront or question Defendants after Plaintiff presented evidence of Defendants altering an evidentiary document" (Dkt. No. 57-1 at 21; *see also* Dkt. No. 57-3, App'x A at pp. A-18 to A-24.)**

Plaintiff claims that the panel deemed Defendants' discovery responses sufficient even though he pointed out two misrepresentations or errors in Defendants' response to discovery requests which were later corrected by Defendants.  (Dkt. No. 57-3, App'x A at pp. A-18 to A-24.)  Defendants argue that the panel's decision on discovery is granted wide discretion and does not justify vacating the award.  (Dkt. No. 58 at 14-15.)

Plaintiff's dissatisfaction with the panel's discovery ruling is not a basis to vacate an arbitration award.  *See Howsam*, 537 U.S. at 84 ("Procedural questions which arise out of the dispute and bear on its final disposition are "presumptively *not* for the judge, but for an arbitrator, to decide."); *Hoteles Condado Beach, La Concha and Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 38 (1st Cir. 1985) ("Arbitration proceedings are not constrained by formal rules of procedure or evidence; the arbitrator's role is to resolve disputes, based on his consideration of all relevant evidence, once the parties to the dispute have had a full opportunity to present their case.").  Arbitrators enjoy "wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit," so long as they give "each of the parties to the dispute an 'adequate opportunity to present its evidence and arguments.'"  *U.S. Life Ins*., 591 F.3d at 1175 (quoting *Sunshine Mining Co.,* 823 F.2d at 1295).  "The arbitrator is the judge of the admissibility and relevancy of evidence submitted in an arbitration proceeding."  *Hoteles Condado Beach, La Concha and Convention Ctr*., 763 F.2d at 39. "[E]very failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award."  *Id.* at 40.  A federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings.  *Id.*

Here, Plaintiff has not articulated how the arbitrator's ruling on discovery prejudiced his rights.  Further, this issue was raised by Plaintiff to the panel.  (Dkt. No. 57-4, App'x B at pp. B-154 to B-156.)  As such, the Court denies Plaintiff's motion on this issue.

5. **"FINRA Rule 2268(g) nullifies FINRA Rule 12206(c) in this case" (Dkt. No. 57-1 at 21; *see also* Dkt. No. 57-3, App'x A at pp. A-25 to A-31.)**

Plaintiff asserts that the panel's reliance on Rule 12206(c) was wrongly decided because that provision was amended in 2003 and did not contain language that nullifies Rule 12206(a) at the time he signed his arbitration agreement in 1995 and 1997.  (Dkt. No. 57-1 at 21-22.)  Defendants respond that the Court determined the arbitration agreement was binding and the issues raised by Plaintiff were within the scope of the arbitration clause and constitutes a final judgment on whether Plaintiff's claims are subject to arbitration. (Dkt. No. 58 at 15.)  Moreover, Plaintiff raised this issue with the Panel on several occasions and cannot be grounds for vacatur.  (*Id.*)

As discussed above, Rule 2268(g) is specific to that Rule, not any other FINRA rule.  Moreover, even if the FINRA rules in 1995 and 1997 were to apply, Plaintiff fails to inform the Court what Rule 12206 provided at that time.  Further, the issue of eligibility of Plaintiff's claims is not a basis for vacatur and the arbitrator's interpretation of Rule 12206 is not subject to plenary review even if based on an erroneous interpretation of the law.  *See A.G. Edwards*, 967 F.2d at 1403 ("The courts should not reverse even in the face of erroneous interpretations of the law.").  Finally, because the issue was fully briefed with the panel, and known to Plaintiff during the arbitration, he has not supported vacatur under section 10(a)(1).

6. **"Director Berry implicated FINRA senior management in his efforts to assist Defendants to retain the case behind FINRA's firewall" (Dkt. No. 57-1 at 22; *see also* Dkt. No. 57-3, App'x A at pp. A-32 to A-33.)**

16

1    Plaintiff contends that Director Berry was wrong on the law when in 2018 he wrote

2 to Plaintiff stating that the issue of whether FINRA's six-year eligibility rule should be

3 decided by arbitrators rather than the courts.  (Dkt. No. 27-1 at 22-23; Dkt. No. 57-3,

4 App'x A at A-32 to A-33.)  Further, he asserts that the panel failed to determine whether

5 his claims are eligible for arbitration under Rule 12206(a) and instead ruled on eligibility

6 under Rule 12206(c).  (*Id.* at pp. A-33.)  Defendants argue that Director Berry's statement

7 was not fraudulent and this issue was already raised by Plaintiff in the arbitration.  (Dkt.

8 No. 58 at 15-16.)

9    This argument concerns eligibility determination, and as discussed above, Plaintiff

10 has failed to show that this issue is a basis to vacate the arbitration award.  *See Kyocera*,

11 341 F.3d at 994 ("Neither erroneous legal conclusions nor unsubstantiated factual

12 findings justify federal court review of an arbitral award under the statute"); *Oshidary,*

13 2012 WL 2135375, at *5 ("The Panel was free to interpret Rule 12206 as it saw fit . . .

14 .").   Moreover, Plaintiff raised this issue on several occasions including in his Statement

15 of Claim, (Dkt. No. 51-3, Garrett Decl., Ex. A at 23) and in briefs filed on December 9,

16 2019, February 26, 2020, July 8, 2020 and March 22, 2021.  (Dkt. Nos. 58-2, Garrett

17 Decl., Ex. K at 33; *id.*, Ex. S at 113; *id.*, Ex. AA at 226; *id.*, Ex. BB at 245.)  Therefore,

18 the Court cannot review the panel's ruling on eligibility.  *See A.G. Edwards*, 967 F.2d at

19 1404 ("where the fraud or undue means is not only discoverable, but discovered and

20 brought to the attention of the arbitrators, a disappointed party will not be given a second

21 bite at the apple.").  Plaintiff's argument is not supported.

22       **7.    "The replacement panel refused to consider Defendants' written**
23           **admission of the ineligibility of Plaintiff's claim when Defendants**
24           **filed their Motion to Compel Arbitration." (Dkt. No. 57-1 at 23;**
           ***see also* Dkt. No. 57-3, App'x A at pp. A-34 to A-37.)**
25

26    Plaintiff again maintains that the panel refused to consider that on March 20, 2020,

27 Defendants admitted that they knew that Plaintiff's claims were ineligible for FINRA

28 arbitration which was 101 days before the Court compelled the parties to arbitration.

(Dkt. No. 57-1 at 23.)  Defendants oppose arguing that this issue was repeatedly raised in arbitration and procedural issues are for the arbitration panel to resolve.  (Dkt. No. 58 at 16-17.)

Again, Plaintiff raises the eligibility issue which the Court has concluded is not subject to vacatur.  *See Kyocera*, 341 F.3d at 994 ("Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute"); *Oshidary,* 2012 WL 2135375, at *5 ("The Panel was free to interpret Rule 12206 as it saw fit . . . .").   Accordingly, this argument is without merit.

> **8.    "The Panel, FINRA and Defendants engaged in prohibited ex parte contacts to force Plaintiff to accept a previously agreed conference date between them."  (Dkt. No. 57-1 at 23; *see also* Dkt. No. 57-3, App'x A at pp. A-38 to A-49.)**

Plaintiff argues that FINRA and Defendants engaged in improper ex parte communication regarding setting dates for the initial pre-hearing conference ("IPHC"). (Dkt. No. 57-3, App'x A at A-40 to A-41.)  Defendants contend that Plaintiff complains of communications between FINRA's administrative staff and Defendants in January 2021 concerning a scheduling poll through FINRA's electronic communications portal that Plaintiff declined to participate in.  (Dkt. No. 58 at 17.)

FINRA Rule 12210 provides that "(a) Except as provided in Rule 12211, no party, or anyone acting on behalf of a party, may communicate with any arbitrator outside of a scheduled hearing or conference regarding an arbitration unless all parties or their representatives are present."   Here, Plaintiff alleges ex parte communication between FINRA administration staff and Defendants concerning scheduling the IPHC.  Therefore, Plaintiff's claim of improper ex parte communication between the arbitration panel and Defendants is not supported.

In any event, an ex parte conduct by an arbitration panel requires vacatur of an award only if the ex parte contact constitutes misbehavior that prejudices the rights of a party.  *See Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union AFL–CIO,*

1   *CLC, Local 182B v. Excelsior Foundry Co*., 56 F.3d 844, 846 (7th Cir. 1995) ("An ex

2   parte conduct is not an automatic ground for invalidating" an arbitration award.); *see e.g.*,

3   *U.S. Life Ins. Co*., 591 F.3d at 1173-74 ("Although an ex parte meeting between an

4   arbitrator and a neutral expert is not a routine arbitration practice the panel had authority

5   to adopt its own rules of procedure and it did.").

6         Therefore, even if the ex parte communication rule applied to the communication

7   between Defendants and the FINRA administrative staff, Plaintiff has failed to allege any

8   prejudice from the ex parte communication as the hearing was eventually rescheduled to

9   a date that Plaintiff could attend.  Finally, this issue was raised to the arbitrators on April

10  4, 2021, (Dkt. No. 58-2, Garrett Decl., Ex. CC at 1-2), and at the evidentiary hearing,

11  Dkt. No. 51-4, Garrett Decl., Ex. H at 282:3-16); thus, because it was raised before the

12  panel, it cannot support vacatur under § 10(a)(1).  Thus, Plaintiff eighth argument is

13  without merit.

14        In sum, the Court concludes that Plaintiff failed to demonstrate by clear and

15  convincing evidence that the eight alleged fraudulent conduct were materially related to

16  an issue in the arbitration and led to the procurement of the award and that the alleged

17  conduct was not discoverable upon the exercise of due diligence prior to the arbitration.

18  *See Lafarge Conseils et Etudes, S.A*, 791 F.2d at 1339.  Accordingly, the Court DENIES

19  Plaintiff's motion to vacate under section 10(a)(1).

20        **B.      Section 10(a)(2) - Evident Partiality or Corruption in the Arbitrators**

21        Plaintiff alleges four instances of evident partiality to support his motion to vacate

22  the arbitration award under 9 U.S.C. § 10(a)(2).  First, he argues that 1) in 2019, FINRA

23  "staff" treated Plaintiff more harshly than Defendants due to deficiencies in their

24  respective pleadings, (Dkt. No. 57-1 at 23-24; Dkt. No. 57-3, App'x A at pp. A-50 to A-

25  52); 2) on November 19, 2020, FINRA "staff" showed favoritism towards Defendants by

26  informing them that Plaintiff had filed a separate federal court lawsuit attempting to

27  enjoin the pending arbitration, (Dkt. No. 57-1 at 24; Dkt. No. 57-3, App'x A at pp. A-53

28  to A-55); 3) FINRA's procedure in appointing the original panel, its failure to respond to

19

his objection to each of the arbitrators proposed by FINRA because they cannot rule on constitutional issues and the panel's selection solely from Defendants' ranking list show evident partiality in favor of Defendants, (Dkt. No. 57-1 at 24; Dkt. No. 57-3, App'x A, at pp. A-56 to A-63); and 4) the arbitrators' failure, at the time he filed his statement of claim, to determine eligibility of Plaintiff's claims under FINRA Rule 12206(a) and instead improperly ruling on it two years later based on a different rule, Rule 12206(c), demonstrates evident partiality.  (Dkt. No. 57-1 at 25; Dkt. No. 57-3, App'x A at pp. A-64 to A-66.)

To demonstrate an arbitrator's "evident partiality", Plaintiff must provide "specific facts indicating actual bias toward or against a party or show that [the arbitrator] failed to disclose to the parties information that creates '[a] reasonable impression of bias.'" *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 645-46 (9th Cir. 2010); *Woods v. Saturn Dist. Corp.*, 78 F.3d 424, 427 (9th Cir. 1996) ("Evident partiality has been found in nondisclosure cases and actual bias cases.").  A plaintiff must show that the arbitration award resulted from the arbitrators' bias.  *Woods,* 78 F.3d at 428. "'The appearance of impropriety, standing alone, is insufficient' to establish evident partiality in actual bias cases."  *Id.* at 427 (quoting *Sheet Metal Workers Int'l Ass'n Local No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985)).  A "party alleging evident partiality [in actual bias cases] must establish specific facts which indicate improper motives . . . ."  *Sheet Metal Workers Int'l Ass'n Local Union No. 420*, 756 F.2d at 746.  "Even repeated rulings against one party to the arbitration will not establish bias absent some evidence of improper motivation."  *Id.*; *Nordahl Dev. Corp., Inc. v. Salomon Smith Barney*, 309 F. Supp. 2d 1257, 1267 (D. Or. 2004) (no evidence of actual bias based on plaintiff's complaints about the arbitrators' ruling on venue, plaintiff's attempt to amend his complaint, the issuance of subpoenas, the presence of witnesses at the proceedings, the arbitrators' delaying the arbitration for over a year to accommodate opposing party's in-house attorney, failure to tell plaintiff before opening statements about the evidentiary rules, and delay in ruling on a motion to amend filed);

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.,* 264 F. Supp. 2d 926, 940 (N.D. Cal. 2003) ("[T]he fact that an arbitrator consistently relied on evidence and reached conclusions favorable to one party, is not enough establish evident partiality.") (citation and internal quotations omitted).

Here, Plaintiff appears to raise an actual bias claim. As noted by Defendants, the first three allegations do not concern any actual bias by an arbitrator but conduct by FINRA administrative staff; therefore, they cannot support a vacatur under section 10(a)(b) which requires bias in the arbitrators that affects the award. The last issue again raises eligibility of his claims which the Court has already concluded is not subject to vacatur. Moreover, Plaintiff has failed to provide specific facts demonstrating any improper motive by any of the arbitrators on the panel. Accordingly, Plaintiff provides no basis for vacating the award under § 10(a)(2).

### C.   Section 10(a)(3) – Arbitrators Guilty of Misconduct by Refusing to Postpone the Hearing or Refusing to Hear Evidence Material to the Controversy or Other Misbehavior Which Prejudices Rights of a Party

Under section 10(a)(3), Plaintiff presents the following five arguments: 1) Plaintiff's first request for postponement of the first scheduled IPHC was due solely because Defendants wanted a postponement; 2) the original panel refused Plaintiff's second request to reschedule the IPHC even though FINRA was the cause of the delay; 3) panel denied Plaintiff's request to reschedule the IPHC due to Covid-19 related healthcare appointments relying on Defendants' argument; 4) the panel assessed 100% of conference costs to Plaintiff as punishment for truthfully responding to the Panel's first IPHC question; and 5) the original panel conflated two separate motions so it could claim it had denied Plaintiff's motion to dismiss in a prior order to avoid Defendants' refusal to oppose his motion to dismiss. (Dkt. No. 57-1 at 25-27.) Defendants disagree on each argument. (Dkt. No. 58 at 20-24.)

Under section 10(a)(3), an arbitration award may be vacated where "the arbitrators were guilty [1] of misconduct [a] in refusing to postpone the hearing, upon sufficient

cause shown, or [b] in refusing to hear evidence pertinent and material to the controversy; or [2] of any other misbehavior by which the rights of any party have been prejudiced[.]" 9 U.S.C. § 10(a)(3). "In determining whether an arbitrator's misbehavior or misconduct prejudiced the rights of the parties, we ask whether the parties received a fundamentally fair hearing." *Move, Inc. v. Citigroup Global Markets, Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016). A fair hearing involves notice, an opportunity to be heard and present relevant and material evidence and the arbitrators were not infected with bias. *U.S. Life Ins. Co.*, 591 F.3d at 1177 ("In short, perhaps [U.S. Life] did not enjoy a perfect hearing; but it did receive a fair hearing"). These provisions necessarily require prejudice to the rights of a party. *Id.* at 1174.

In addition, "a court's review of the arbitrator's decision to postpone or not postpone a hearing is quite limited." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995). Arbitrators are granted broad discretion and deference in "their determinations of procedural adjournment requests." *Fordjour v. Washington Mut. Bank*, No. C 07–1446 MMC (PR), 2010 WL 2529093, at *5 (N.D. Cal. June 18, 2010). A party to an arbitration proceeding is not entitled to a postponement merely by requesting one. *Sheet Metal Workers Int'l Ass'n v. Jason Mfg. Inc*., 900 F.2d 1392, 1398 (9th Cir. 1990). An arbitrary denial of a reasonable request for a postponement may serve as a ground for vacating the arbitration award. *See El–Dorado School Dist. # 15 v. Cont'l Cas. Co*., 247 F.3d 843, 848 (8th Cir. 2001); *Fairchild & Co. Inc. v. Richmond, F. & P.R. Co*., 516 F. Supp. 1305, 1314-15 (D.D.C. 1981).

Plaintiff's first three arguments concern three separate requests for postponements of the initial pre-hearing conference, not the evidentiary hearing. As noted by Defendants, a hearing and a conference are distinct events in arbitration. *See Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1278 n. 9 (9th Cir. 2006) ("By definition a 'preliminary' hearing conference takes place before a hearing on the merits and deals with preliminary matters, such as scheduling and deadlines."). § 10(a)(3) specifically bars misconduct "in refusing to postpone the *hearing*." 9 U.S.C. § 10(a)(3) (emphasis

added).  Therefore, the Court concludes that allegations concerning denial of requests for postponements of the IPHC does not fall under § 10(a)(3).

Next, Plaintiff argues that the panel assessed 100% of the pre-hearing conference costs to him because he refused to accept the panel.  (Dkt. No. 57-3, App'x A at pp. A-86 to A-87.)  Defendants argue that the panel has discretion to assess fees and does not have to provide reasons.  (Dkt. No. 58 at 23.)

Without providing reasons, the panel assessed all pre-hearing conference costs against Plaintiff.  (Dkt. No. 51-4, Garrett Decl., Ex. I at 343.)  The panel does not have to provide reasons for its decisions and courts must presume it addressed it properly.  *See A.G. Edwards*, 967 F.2d at 1403.  Plaintiff appears to disagree with the fairness of the panel's decision to impose pre-hearing conference fees solely on him, yet Plaintiff does not explain why the panel's assessment of fees constitutes misbehavior.  *See* 9 U.S.C. § 10(a)(3).  Therefore, Plaintiff has not demonstrated reasons sufficient to vacate the assessment of pre-hearing conference fees imposed on him.

Finally, Plaintiff maintains that the original panel conflated two distinctly separate motions, (Dkt. No. 57-1 at 27, Dkt. No. 57-3, App'x A at pp. A-88), but he does not explain how this constitutes misbehavior.  Even if the panel conflated two distinct motions, a mistake by an arbitrator does not warrant vacatur under section 10(a)(3).  *See Bosack*, 586 F.3d at 1102.  Accordingly, the Court DENIES Plaintiff's motion to vacate under § 10(a)(3).

### D.      Section 10(a)(4) – Arbitrators Exceeded their Powers

Finally, Plaintiff presents ten reasons why the arbitrators exceeded their powers. (Dkt. No. 57-1 at 27-30.)  First, Plaintiff argues that the replacement panel took advantage of his confusion and scheduled the evidentiary hearing before the summer. (Dkt. No. 57-1 at 27; Dkt. No. 57-3, App'x A at pp. A-89 to A-108.)  Second, the panel denied Plaintiff's motion to dismiss even though it was unopposed.  (Dkt. No. 57-1 at 28; Dkt. No. 57-3, App'x A at pp. A-109 to A-118.)  Third, the panel ruled on his motion to dismiss three months before the evidentiary hearing and without a hearing.  (Dkt. No. 57-

1 at 28; Dkt. No. 57-3, App'x A at pp. A-119 to A-125.)  Fourth, the panel denied

Plaintiff's motion to change venue.  (Dkt. No. 57-1 at 28; Dkt. No. 57-3, App'x A at pp.

A-126 to A-127.)  Fifth, the panel ruled on Plaintiff's motion to determine eligibility of

his claim during a prehearing conference without oral argument.  (Dkt. No. 57-1 at 28-29;

Dkt. No. 57-3, App'x A at p. A-128.)  Sixth, the panel, at the prehearing conference,

ruled on a question of constitutionality during the prehearing conference while admitting

it is not qualified to rule on constitutional issues.  (Dkt. No. 57-1 at 29; Dkt. No. 57-3,

App'x A at pp. A-129 to A-131.)  Seventh, the panel improperly granted Defendants'

motion to amend their answer.  (Dkt. No. 57-1 at 29; Dkt. No. 57-3, App'x A at pp. A-

132 to A-135.)  Eighth, Chair Rosen's May 21, 2021 order ignored evidence of

Defendants' altering evidentiary document.  (Dkt. No. 57-1 at 30; Dkt. No. 57-3, App'x

A at p. A-36.)  Ninth, the panel evaded Plaintiff's request for clarification on whether the

removed panel's rulings were considered valid or void and would have affected

Plaintiff's opening statement and argument.  (Dkt. No. 57-1 at 30; Dkt. No. 57-3, App'x

A at pp. A-137 to A-144.)  Tenth, the panel failed to answer Plaintiff's questions

regarding the composition of the panel.  (Dkt. No. 57-1 at 30; Dkt. No. 57-3, App'x A at

pp. A-145 to A-149.)

     In response, Defendants argue that Plaintiff agreed to submit "any controversy"

that arose out of his relationship with Defendants to arbitration, agreed to submit claims

"as set forth in the attached statement of claim" to arbitration in accordance with the

FINRA Code of Arbitration Procedure and agreed that the arbitrators' interpretation and

application of the FINRA Rules would be final and binding on him.  (Dkt. No. 58 at 24.)

     Vacating an arbitration award on the ground that arbitrators exceeded their powers

under § 10(a)(4), is proper "only when arbitrators purport to [1] exercise powers that the

parties did not intend them to possess or [2] otherwise display a manifest disregard of the

law," or "[3] when the award is 'completely irrational.'"  *Kyocera Corp.*, 341 F.3d at

997, 1002-03.  First, arbitrators exceed their powers for purposes of § 10(a)(4) when they

"act outside the scope of the parties' contractual agreement."  *Michigan Mut. Ins., Co.,* 44

F.3d at 830; *see Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp*., 559 U.S. 662, 682 (2010) ("arbitrator derives his or her powers from the parties' agreement"). "[T]he scope of authority of arbitrators generally depends on the intention of the parties to an arbitration and is determined by the agreement or submission." *Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir. 1987).

Second, "arbitrators exceed their powers . . . not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law." *Kyocera Corp*., 341 F.3d at 997 (internal quotation marks and citations omitted). "[F]or an arbitrator's award to be in manifest disregard of the law, '[i]t must be clear from the record that the arbitrator [ ] recognized the applicable law and then ignored it.'" *Bosack*, 586 F.3d at 1104 (quoting *Comedy Club,* 553 F.3d at 1290) (quoting *Mich. Mut. Ins. Co*., 44 F.3d at 832). "[M]anifest disregard . . . requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law.'" *Collins*, 505 F.3d at 879 (quoting *San Martine Compania De Navegacion, S.A.,* 293 F.2d at 801). Finally, an award may be vacated if it is "completely irrational." *Comedy Club*, 553 F.3d at 1288. This "standard is extremely narrow and is satisfied only 'where [the arbitration decision] fails to draw its essence from the agreement.'" *Id.* (quoting *Hoffman v. Cargill Inc.,* 236 F.3d 458, 461-62 (8th Cir. 2001)).

Here, Plaintiff agreed to submit "by arbitration any controversy" between himself and Defendants. (Dkt. No. 31 at 2.) The arbitration agreement also provided that

> (1) arbitration is final and binding on the parties; (2) the parties are waiving their right to seek remedies in court, including the right to a jury trial; (3) pre-arbitration discovery is generally more limited than and different from court proceedings; (4) the arbitrators' award is not required to include factual findings or legal reasoning, and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited; (5) the panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

*Id.* On September 16, 2017, when Plaintiff submitted his statement of claim, he agreed to be bound by the FINRA Rules and FINRA Code of Arbitration Procedure. (Dkt. No. 51-4, Garrett Decl., Ex. B at 177.) Defendants also agreed to be bound by the FINRA Rules and FINRA Code of Arbitration Procedure. (*Id.*, Garrett Decl., Ex. D at 194-95.) Therefore, the arbitration agreement between the parties is broad allowing the panel to rule on "any controversy."

As an initial matter, "[a] mere procedural irregularity provides no basis upon which to conclude that the [arbitrators] acted beyond [their] authority." *Sheetmetal Workers*, 756 F.2d at 744 (argument of "allowing Local 420 to bypass the initial stage of the grievance procedure; [and] by failing to convene within fourteen calendar days following the initial request for its services" do not warrant vacatur for an arbitrator exceeding his powers). § 10(a)(4) "is designed to enable the district court to vacate an arbitral award which clearly goes beyond the substantive issues submitted by the parties." *Id.* at 745.

Plaintiff, without legal authority, presents arguments on procedural and substantive rulings of the panel on the first, second, third, fourth, fifth, seventh, eighth, ninth and tenth issues and does not explain how these actions were outside the scope of the arbitration agreement, that the arbitrators acted in manifest disregard of the law or were completely irrational in its decision. In addition, many of these arguments are duplicative of arguments raised in the other three section of § 10(a) which have been rejected by the Court. For example, the second and third arguments on the panel's decision to deny Plaintiff's unopposed motion to dismiss concern the panel's ruling on eligibility which the Court concluded does not warrant vacatur.

On the sixth claim, Plaintiff argues that Chair Rosen[7] admitted he was not a constitutional lawyer, yet ruled it was authorized to rule that the claim was eligible for

---

[7] In his reply, Plaintiff, for the first time, argues that Chair Rosen's diminished intellectual capacity either due to "dementia, gross negligence of crippling incompetence" caused him to be incompetent to arbitrate the dispute. (Dkt. No. 59 at 6, 7.) The Court declines to consider Plaintiff's new argument raised for the first time in reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003)).

FINRA arbitration.  (Dkt. No. 57-1 at 29; Dkt. No. 57-3, App'x A at A-129 to A-131.)
He claims that the "panel ruled on a question of constitutionality during the prehearing
conference, while openly admitting it is not qualified to rule on constitutional issues."
(Dkt. No. 57-3, App'x A at A-129.)  It is not clear what Plaintiff is alleging and how a
ruling on eligibility involves a question of constitutional law.  Therefore, the Court
concludes Plaintiff's sixth issue is without merit.

In conclusion, Plaintiff has failed to demonstrate that the arbitrators exceeded their
powers beyond what Plaintiff and Defendants agreed to, that the arbitrators recognized
the applicable law and then ignored it and that the arbitrators' rulings were completely
irrational.  The Court DENIES Plaintiff's motion to vacate under § 10(a)(4).

## Conclusion

Based on the reasoning above, the Court GRANTS Defendants' motion to confirm
the arbitration award and DENIES Plaintiff's motion to vacate the arbitration award.  The
Clerk of Court shall issue judgment accordingly.

IT IS SO ORDERED.

Dated:  December 20, 2021

Hon. Gonzalo P. Curiel
United States District Judge

17-cv-1843-GPC-MDD